IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  24-cv-01422-DDD-TPO

ESTATE OF RYAN WAYNE HARMON,
by and through his father and personal representative, Ronald Harmon,
ASHLEY HARMON,
TYLER HARMON,
CALEB HARMON, and
M.H., a minor, by and through next friends and guardians
Ronald Harmon and Colleen Harmon,

        Plaintiffs,

v.

BOARD OF COUNTY COMMISSIONERS
FOR THE COUNTY OF LARIMER, COLORADO;
JOHN FEYEN, in his official capacity as Larimer County Sheriff;
KYLE DENEEN, individually;
CORRHEALTH, PLLC; and
OSCAR PALOMINO, individually,

        Defendants.

---

## SCHEDULING ORDER

---

### 1.    DATE OF CONFERENCE

The Scheduling Conference pursuant to Fed. R. Civ. P. 16(b) was held on **February 12, 2025,** commencing at **9:30 a.m.** in Courtroom C-402, Second Floor, Byron G. Rogers United States Courthouse, 1929 Stout Street, Denver, Colorado 80294 before U.S. Magistrate Judge Timothy P. O'Hara.

Appearing for the parties are:

John R. Holland
**Dan Weiss**
HOLLAND, HOLLAND EDWARDS & GROSSMAN
1437 High Street
Denver, CO 80218
john@hheglaw.com
dan@hheglaw.com
*Counsel for Plaintiffs*

**David M. Goddard**
BRUNO, COLIN, GODDARD & LOWE
1120 Lincoln Street, Suite 1606
Denver, CO 80203
dgoddardl@brunolawyers.com

*Counsel for Larimer County
Defendants*

**Alexandra G. Ah Loy** (via telephone)
HALL BOOTH SMITH
6301 Waterford Blvd., Suite 200
Oklahoma City, OK 73118
allieahloy@hallboothsmith.com
*Counsel for Defendant CorrHealth*

Jacqueline B. Sharuzi
**Stephanie L. Clark**
SHARUZI LAW GROUP
555 17th Street, Suite 975
Denver, CO 80202
jackie@sharuzilaw.com
sclark@sharuzilaw.com
*Counsel for Defendants Palomino*

## 2.    STATEMENT OF JURISDICTION

This action arises under the Constitution and laws of the United States, including Article

III, Section 1 of the United States Constitution and 42 U.S.C. § 1983 and 42 U.S.C. § 1988.  The

Jurisdiction of this Court is further invoked pursuant to 28 U.S.C. §§ 1331, 1343, and 2201.

This case is instituted in the United States District Court for the District of Colorado

pursuant to 28 U.S.C. § 1391 as the judicial district in which all relevant events and omissions

occurred and in which Defendants maintain offices and/or reside.

Supplemental pendent jurisdiction is based on 28 U.S.C. §1367 because the alleged

violations of federal law are substantial and the pendent causes of action derive from a common

nucleus of operative facts.

### 3.     STATEMENT OF CLAIMS AND DEFENSES

#### a.     Plaintiffs:

Ryan Harmon was incarcerated as a pre-trial detainee at the Larimer County Jail ("LCJ") on May 5, 2023. As his jailors and medical staff knew from the outset, Mr. Harmon suffered from serious mental illness, including chronic anxiety and depression. On May 21st Mr. Harmon was isolated in a quarantine cell because of suspected COVID in a cellmate, predictably causing his already significant mental illness to intensify into a mental health crisis. In quarantine, Mr. Harmon repeatedly complained to LCJ Deputies, CorrHealth medical staff, his family and loved ones that he was being punished for no reason and could not handle being isolated and fed through a door "like a dog". He repeatedly told Deputies and CorrHealth medical staff that he would not live like this, that he could not stand isolation, and that they had three days to get him out of quarantine. Ryan Harmon obviously then needed to be placed on a suicide watch.

Rather than protecting Mr. Harmon and providing him with mental health care or contacting someone who could, LCJ Deputies and CorrHealth staff instead reacted to Mr. Harmon's behavior management problems, and threats of self-harm caused by his decompensating mental state, by telling him he would be punished by putting him someplace "he did not want to be." Thus, instead of taking Mr. Harmon's repeated threats to kill himself with the utter seriousness and urgency that the law demands, LCJ Deputies and CorrHealth medical staff treated him as if he were faking and used the threat of putting him on suicide watch – with the protocols of clothing removals, use of a smock, and more rigorous isolation – to try to scare him into stopping his loud expressions of his suicidal intent to kill himself.

After receiving some unexpected and distressing potential sentencing news from his public defender, Mr. Harmon repeatedly called his family and loved ones, made a ruckus at the Jail, and loudly threatened to harm himself to jailers, caregivers, inmates, and family. These recorded calls and Mr. Harmon's very suicidal words could be heard throughout the quarantine area of the Jail. But even after being expressly told by a nearby inmate, Nicholas Ivarson, that Mr. Harmon had a specific suicide plan using items he was known to have in his cell, Defendants Deneen and Palomino decided, with subjective and objective deliberate indifference, to *not* provide Mr. Harmon with urgent protection, mental health evaluation, or treatment. They decided *not* to contact mental health providers who were licensed and trained to do so. Mr. Harmon was thus left to his own devices in his non-suicide-proof cell, alone, in an acutely suicidal state of mind, while also known to possess the tools he was then stating he was planning on using to hang himself.

On May 25th, Mr. Harmon was found hanging by a cord taken from his laundry bag, having used the very tools that LCJ Deputies and CorrHealth nursing staff were explicitly warned about, and that Ryan Harmon had said he was going to use. Thus did Individual Defendants, with deliberate indifference and utter negligence, for which CorrHealth and/or Health Advocates Network have vicarious liability, let a suicidal man who told them he was going to kill himself do so without making the slightest effort to stop him.[1]

b.      **Board of County Commissioners for the County of Larimer, Colorado, Sheriff John Feyen and Kyle Deneen ("County Defendants"):**

The death of Ryan Harmon while an inmate at the Larimer County Jail is without question a tragedy; however, this tragedy was not the result of any act or omission, negligence or deliberate

---

[1] The entirety of the facts section of Plaintiff's Complaint and Jury Demand, Doc. #1, is hereby incorporated as if set forth fully herein to ensure all factual allegations are included.

indifference by Larimer County, Sheriff Feyen or any of the employees of the Larimer County Sheriff's Office. The Larimer County Defendants deny that they deprived Mr. Harmon of any federal or state constitutional or statutory right or that his death was the result of anything other than Mr. Harmon's decision to inflict self-harm.

On May 25, 2023, a Larimer County Sheriff's Office Deputy, while conducting his routine scheduled welfare check rounds discovered Mr. Harmon unresponsive and in obvious respiratory distress. Mr. Harmon had fashioned a ligature from a piece of black fabric from his facility issued laundry bag around his neck and attached it to a towel hook utilizing his body weight to attempt to strangle himself. The deputy immediately radioed for emergent medical assistance, entered Mr. Harmon's cell, cut him free from the towel hook and immediately began CPR to regain a pulse and revive Mr. Harmon. Other deputies and jail medical staff responded to assist is resuscitation efforts until paramedics arrived, took over CPR and transported Mr. Harmon to a local hospital. Tragically, despite the heroic efforts of the deputies and jail medical staff, Mr. Harmon succumbed to his injuries and died on June 1, 2023.

Prior to May 25, 2023, jail staff were not advised, nor were they aware that Mr. Harmon was suicidal or contemplating self-harm. Upon his intake and screening at the Larimer County Jail, Mr. Harmon was asked repeatedly questions about suicidal intentions, to include questions of whether he had a history of suicide attempts, whether he had ever tried to hurt or kill himself, and whether he was currently thinking of hurting himself. Mr. Harmon's response to each of these inquiries was "no".  Further, Mr. Harmon denied any suicidal ideation when he was seen by counselors on two separate occasions on May 11 and May 18, 2023. During these sessions, he was specifically questioned about the presence of any suicidal ideations and again Mr. Harmon denied

having any thoughts of self-harm. Subsequent to these sessions and in the days leading up to May 25, 2023, Mr. Harmon did express threats of self-harm to members of his family over the phone and while these calls are recorded, they are not monitored in real time and sadly, Mr. Harmon's threats were not relayed to jail officials. Nor did Mr. Harmon loudly or otherwise threaten to harm himself to jail deputies or staff and despite claims to have done so after the fact, no warnings were provided to deputies from other inmates housed in the same pod as Mr. Harmon. To the extent other inmates or others outside the jail were aware of Mr. Harmon's suicidal threats, those threats were never relayed to jail officials prior to Mr. Harmon's suicide attempt.

The Larimer County Defendants generally deny all of the allegations in the Complaint. The actions of the Larimer Defendants were at all times objectively reasonable and in furtherance of legitimate law enforcement purposes. Larimer Defendants sued in their individual capacity are entitled to qualified immunity on the federal claim brought against them and are entitled to immunity on the various alleged state claims by virtue of the Colorado common law good faith doctrine. The actions of Larimer Defendants were at all times objectively reasonable and in furtherance of legitimate law enforcement purposes. Plaintiffs have failed to allege, and cannot establish, an affirmative link between the actions of the individually named Larimer Defendants and the constitutional or statutory injury complained of, nor have Plaintiffs adequately alleged that each individually named Larimer Defendant personally participated or acquiesced in any constitutional or statutory deprivation upon which Plaintiffs' claims are asserted.

Plaintiffs have not sufficiently alleged and cannot establish that the injuries alleged in the Complaint, if any, were attributable to any act or omission or negligence of the Larimer Defendants in their official capacities which resulted from the conduct of the Larimer Defendants as final

policy-makers for Larimer County, nor can Plaintiffs establish that their alleged injuries, damages, or losses, if any, arose from the implementation of a policy or custom attributable to the Larimer Defendants in their official capacities. Plaintiffs have failed to allege an improper custom or policy which they purport to have caused the unconstitutional or statutory deprivations they allegedly suffered. Defendant Larimer County cannot be liable to the Plaintiffs herein on the basis of vicarious liability or *respondeat superior*. *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

Subject matter jurisdiction is lacking inasmuch as Plaintiffs' claims fail to rise to the level of a deprivation of federal or state constitutional rights. In that regard, Plaintiffs' Complaint fails to state a valid claim upon which the relief prayed for may be granted. Defendant Larimer County Board of County Commissioners is not a proper party defendant to this action. Finally, Plaintiffs' damages, if any, are not to the extent and nature as alleged by Plaintiffs, were the result of the negligent, intentional, and/or unlawful conduct of a third party, including Mr. Harmon's contributory conduct, and have not been adequately mitigated by Plaintiffs as required by law. The Larimer County Defendants incorporate by reference their answer and affirmative defenses filed in this case and reserve the right to assert any additional claims and defenses as may become known through discovery or are supported by the evidence.

### c.    CorrHealth:

Defendant CorrHealth denies all allegations made by Plaintiffs against it. CorrHealth agrees that Mr. Harmon's successful suicidal gesture and death is tragic. However, no CorrHealth employee was ever aware that Mr. Harmon was at risk for suicide, and Mr. Harmon never informed any CorrHealth employees that he was suicidal. Nor were any CorrHealth

employees ever put on notice that Mr. Harmon posed a risk of suicide. Mr. Harmon was

specifically asked, and denied, whether he was suicidal or experiencing thoughts of self-harm on

numerous occasions. The only claim against CorrHealth is for medical negligence under

Colorado state law, and there is no claim against CorrHealth for constitutional violations and/or

deliberate indifference. In the event the constitutional claims are dismissed, CorrHealth asserts

that this court lacks jurisdiction over the claims against CorrHealth.

     All of the care and treatment rendered to Mr. Harmon was appropriate, reasonable, and

within the standard of care. The care Mr. Harmon received from CorrHealth medical personnel

was not the proximate cause of his death, and CorrHealth did not cause any of the claimed

damages in this action. Nor did CorrHealth's policies, procedures, or practices proximately cause

Mr. Harmon's death. Defendant further asserts that Oscar Palomino was not an employee of

CorrHealth and that the doctrine of *respondeat superior* and other theories of vicarious liability

based on the alleged conduct of Nurse Palomino do not apply to CorrHealth.

     CorrHealth also asserts that it has immunity from liability under the Public Readiness and

Emergency Preparedness (PREP) Act related to Plaintiff's claims, to the extent they exist, that

CorrHealth was negligent in recommending that Mr. Harmon be placed into quarantine as a

counter-measure against the spread of Covid-19. This court lacks jurisdiction over any such

claims.

     Finally, Plaintiff's damages asserted in this action were the result of the negligent,

intentional, and/or unlawful conduct of a third party as well as by Mr. Harmon's contributory

conduct, and have not been adequately mitigated by Plaintiffs as required by law. More

specifically, Mr. Harmon's death was caused by his own conduct. Additionally, Plaintiffs failed

to notify any personnel at the Larimer County Jail that Mr. Harmon made threats of self-harm to them when they communicated with him in the Larimer County Jail. Knowledge of Mr. Harmon's self-harm threats to his family members cannot be imputed to CorrHealth or any other official working at the Larimer County Jail, and Plaintiffs are therefore contributorily negligent.

Defendant CorrHealth adopts and incorporates the affirmative defenses asserted within its Answer to the Complaint and reserves the right to assert additional defenses as discovery progresses.

### d.    Oscar Palomino:

Defendant denies that he was deliberately indifferent to any serious medical/mental health need experienced by Mr. Harmon, and asserts that his care provided was reasonable, appropriate, and met all applicable standards of care. Defendant further denies that his actions or inactions caused or contributed to Plaintiff's injuries or the Decedent's death.

### 4.    UNDISPUTED FACTS

The following facts are undisputed:

1.    At all times relevant hereto, the decedent, Ryan Harmon, was a citizen of the United States and a resident of the State of Colorado.

2.    At all times relevant hereto, Defendant CorrHealth, contracted with Larimer County to provide medical care to inmates at Larimer County Jail.

3.    Ryan Harmon was booked as a pre-trial detainee at the Larimer County Jail on May 5, 2023.

4.    Ryan Harmon died on June 1, 2023.

5.      At all times relevant hereto, Defendant Kyle Deneen was a citizen of the United States and a resident of Colorado.

6.      At all times relevant hereto, Defendant Oscar Palomino was a citizen of the United States and a resident of Colorado.

## 5.      COMPUTATION OF DAMAGES

a.      **Plaintiffs**:  Appropriate relief at law and equity; declaratory relief and other appropriate equitable relief; economic losses on all claims as allowed by law; compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, loss of companionship and association with family members, and other pain and suffering on all claims allowed by law in an amount to be determined at trial; punitive damages on all claims allowed by law and in an amount to be determined at trial; attorneys' fees and the costs associated with this action, including expert witness fees, on all claims allowed by law; pre- and post-judgment interest at the appropriate lawful rate; any further relief that this court deems just and proper, and any other relief as allowed by law.

Plaintiff Estate has suffered injuries and losses, including the death of Mr. Harmon, entitling it to recover his compensatory and special damages, including, but not limited to, for loss of constitutional rights, loss of enjoyment of life, and his herein described pain and suffering during and leading up this fatal event, permanent lost earnings and earnings capacity for the expected productive working lifetime of Mr. Harmon, under the mortality tables and other special damages, all in amounts to be proven at trial.

Plaintiffs Ashley Harmon, Tyler Harmon, Caleb Harmon and M.H have suffered and continue to suffer economic and non-economic damages, losses, and injuries in an amount to be

determined by the jury at trial. These damages include, but are not limited to, funeral expenses and financial losses due to the financial benefits they would have reasonably been expected to receive from their father had he lived, pain and suffering, upset, grief, loss of society and companionship, impairment in the quality of their lives, inconvenience, anger, depression, and all other purely non-economic damages as allowed under the Colorado Wrongful Death Act. These Plaintiffs are therefore entitled to general and compensatory damages for such pain and suffering and emotional distress and to special damages.

In addition to compensatory, economic, consequential and special damages, Plaintiffs are entitled to punitive damages against individual Defendants, in that their actions were taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiffs.

Plaintiffs are not able currently to put a number on the economic losses. Plaintiffs are requesting documents evidencing the work and income history of Mr. Harmon and anticipate using an economist to ascertain the present value of lost income. Undersigned counsel is in the process of gathering these documents that will be used to prove economic losses and will disclose them as appropriate.

Other than economic damages, Plaintiffs' damages are not of the type that can be readily tallied here. Plaintiffs have claims for their upset and feelings. Plaintiff Estate has claims for the loss of the value and pleasure of life for Mr. Harmon including for his pain and suffering *before* death, loss of earnings based upon the probable duration of his life had not the injury occurred, his loss of consortium, and other damages recognized in common law tort actions under *Berry v. Muskogee* and progeny, and for punitive damages. These damages are to be determined by a jury,

but the methodology for calculating the value of a person's pleasure and enjoyment of their life, including lost relationships, follows an increasingly recognized framework for such assessments that asks the trier of fact to consider the value of one year of life of the decedent and multiply that value by the decedent's pre-death life expectancy.

Undersigned counsel will provide Defendants in this matter with whatever quantifiable evidence is obtained to show measurement of damages, but civil rights violations like this are not given to easy description of losses and instead require that the jury determine their value.

Plaintiffs are also entitled to attorneys' fees and costs, and prejudgment and post-judgment interest and costs as allowable by federal law.

**COURT**: Within 30 days (by **March 12, 2025**), Plaintiffs shall provide Defendants with a more specific estimated damages amount.

b. **Board of County Commissioners for the County of Larimer, Colorado, Sheriff John Feyen and Kyle Deneen ("County Defendants"):** The Larimer County Defendants reserve the right to pursue attorneys' fees and costs as permitted by law.

c. **Defendant CorrHealth:** CorrHealth reserves the right to seek attorneys' fees and costs as permitted by law.

d. **Defendant Palomino:** Defendant denies that Plaintiffs are entitled to any relief whatsoever. The Defendant does not seek damages as this time; however, he reserves the right to recover any attorney fees and costs to which he may be entitled.

### 6.    REPORT OF PRE-CONFERENCE DISCOVERY & MEETING UNDER Fed. R. Civ. P. 26(f)

a.    Date of Rule 26(f) meeting: **January 14, 2025.**

b.        Names of each participant and each party represented: Counsel for Plaintiffs, John Holland and Dan Weiss of Holland Holland Edwards & Grossman; Counsel for County Defendants, David Goddard, Marcus Barone of Bruno, Colin, Goddard and Lowe; Counsel for Defendant CorrHealth, Alexandra Ah Loy of Hall Booth Smith; Counsel for Defendant Palomino, Stephanie Clark of Sharuzi Law Group via Zoom.

c.        Statement as to when Rule 26(a)(1) disclosures were made or will be made:

Rule 26(a)(1) disclosures were made by agreement on or before **January 28, 2025**.

d.        Proposed changes, if any, in timing or requirement of disclosures under Fed.R.Civ.P. 26(a)(1):

**None**.

e.        Statement concerning any agreement to conduct informal discovery: The parties have not agreed to conduct informal discovery but will attempt to cooperate with informal requests for discrete documents to the extent feasible as the case unfolds.

f.        Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit numbering system:

The parties have agreed to the use of a unified exhibit numbering system and have agreed in a general sense to take all reasonable steps to reduce discovery and other litigation costs. Otherwise, there are no specifically agreed-upon procedures to reduce discovery or litigation costs. The parties agree to cooperate regarding taking remote depositions by telephone and video conferencing where technically feasible and if necessary due to health restrictions or in an effort to reduce costs. The parties reserve the right to take party and key witness depositions in person if circumstances permit.

g.    Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form.

The parties do not anticipate that this case will involve extensive amounts of electronically stored information ("ESI"). The parties have taken steps to preserve any emails, texts, videos, and other ESI which may exist regarding this matter. The parties agree that all ESI will be produced in electronic form unless production in electronic form is not possible, and the parties agree to exchange ESI in native and/or PDF format to the fullest extent feasible. The parties agree to work cooperatively to identify custodians and search terms. The parties agree to each utilize a single Bates labeling system (*i.e.*, one set of Bates numbers for each party) to identify disclosures and discovery to reduce discovery costs. The parties further agree to work cooperatively to avoid discovery disputes related to electronically stored information and to be guided by the Sedona Principles to resolve any disputes which may arise concerning ESI.

h.    Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case:

Pursuant to Fed. R. Civ. P. 26(f), the parties briefly discussed the possibility for a prompt settlement or resolution of the case. The parties agreed any further discussions of the sort are premature at this time until further disclosures have been made and discovery has been conducted, as the parties have differing views as to the case's merits.  The parties agree that they will continually reassess the prospects of settlement as this case progresses and that appropriate discussions may be entertained following adequate disclosures − including for experts − and discovery in the case in order to make such discussions or a settlement conference an economical use of time and expense.

**COURT**:   This Court reviewed the procedures for requesting a Settlement Conference with the

Parties.

## 7.    CONSENT

All parties have not consented to the exercise of jurisdiction of a magistrate judge.

## 8.    DISCOVERY LIMITATIONS

a.    Modifications which any party proposes to the presumptive numbers of depositions
or interrogatories contained in the Federal Rules:

With respect to depositions:

The parties shall be limited to 15 depositions per side, in addition to named parties (which
also includes 30(b)(6) designee depositions) as well and retained experts.

With respect to Interrogatories:

**Plaintiffs' Proposal**: Plaintiffs may serve 25 interrogatories on Larimer County Related

Defendants; 25 interrogatories on the CorrHealth Defendant; and 25 on Defendant

Palomino.

Larimer County Related Defendants may serve 25 interrogatories on Plaintiffs.

CorrHealth Related Defendants may serve 25 interrogatories on Plaintiffs.

Defendant Palomino may serve 25 interrogatories on Plaintiffs.

**County Defendants' Proposal**: Larimer County Defendants agree with Plaintiffs'

proposal regarding Interrogatories.

**Defendant CorrHealth Proposal**: CorrHealth agrees with Plaintiffs' proposal regarding

Interrogatories.

**Defendant Palomino Proposal**: Defendant Palomino agrees with Plaintiffs' proposal

regarding Interrogatories.

b.      Limitations which any party proposes on the length of depositions:

**Plaintiffs**: None. Depositions are limited to one day of seven hours as provided in Fed. R. Civ. P. 30(d)(2), unless the Parties otherwise stipulate.

**Larimer County Defendants' Proposal**: Party and Expert depositions limited to one day of seven (7) hours. Witness depositions limited to one day of four (4) hours.

**Defendant CorrHealth Proposal**: CorrHealth agrees to the limitations proposed by Larimer County Defendants.

**Defendant Palomino Proposal**: Defendant Palomino agrees to the limitations proposed by the Larimer County Defendants.

**COURT**:      The Court adopts Plaintiffs' proposal. The standard limitation on deposition length shall apply generally to all witnesses. Defendants may seek judicial intervention if Plaintiffs pursue excessively long depositions.

c.      Limitations which any party proposes on the number of requests for production and/or requests for admission:

With respect to Requests for Production:

**Plaintiffs' Proposal**: Plaintiffs may serve 25 Requests for Production on Larimer County Related Defendants; 25 Requests for Production on the CorrHealth Defendant; and 25 Requests for Production on Defendant Palomino.

Larimer County Related Defendants may serve 25 Requests for Production on Plaintiff.

Defendant CorrHealth may serve 25 Requests for Production on Plaintiff.

Defendant Palomino may serve 25 Requests for Production on Plaintiff.

**County Defendants' Proposal**: Larimer County Defendants agree with Plaintiffs' proposal regarding Requests for Production.

**Defendant CorrHealth Proposal**: Defendant CorrHealth agrees with Plaintiffs' proposal regarding Requests for Production.

**Defendant Palomino Proposal**: Defendant Palomino agrees with Plaintiffs' proposal regarding Requests for Production.

With respect to Requests for Admissions:

**Plaintiffs' Proposal**: Plaintiffs may serve 25 Requests for Admission on Larimer County Related Defendants; 25 Requests for Admission on the CorrHealth Defendant; and 25 Requests for Admission on Defendant Palomino.

Larimer County Related Defendants may serve 25 Requests for Admission on Plaintiffs.

Defendant CorrHealth may serve 25 Requests for Admission on Plaintiffs.

Defendant Palomino may serve 25 Requests for Admission on Plaintiffs.

**County Defendants' Proposal**: Larimer County Defendants agree with Plaintiffs' proposal regarding Requests for Admissions.

**Defendant CorrHealth Proposal**: Defendant CorrHealth agrees with Plaintiffs' proposal regarding Requests for Admission.

**Defendant Palomino Proposal**: Defendant Palomino agrees with Plaintiffs' proposal regarding Requests for Admission.

As the Rules state, the parties agree that these limitations on the Requests for Admission do not include Requests for Admissions concerning authenticity or genuineness of documents. These numbers are based on what undersigned believes is likely to be sufficient

to conduct the necessary targeted discovery and will not be used to conduct unnecessary
discovery.

        d.      Deadline for service of Interrogatories, Requests for Production of Documents
and/or Admissions:

The Parties shall serve all written discovery requests no later than 45 days before the
discovery cut-off. That is, by **November 14, 2025**.

        e.      Other Planning or Discovery Orders:

(1)     The Parties shall follow the procedure set out at Section VI of the <u>Magistrate Judges'</u>
<u>Uniform Civil Practice Standards</u> (D.C.COLO.MJ). Rather than file a motion about a discovery
dispute, the Parties first shall confer about the matter. If the Parties are unable to resolve the dispute
on their own, then the Party seeking relief shall request a Discovery Conference with the Court by
sending an email, copied to all Parties, to *o'hara_chambers@cod.uscourts.gov*. The Court will
issue an order to schedule the Discovery Conference and to provide the Parties with instructions
on how to proceed. The Court will determine at the conference whether to grant leave to file a
motion. (As permitted by D.C.COLO.MJ § VI, a motion may be filed <u>without</u> the prerequisite
discovery conference for discovery that concerns a pro se incarcerated litigant or a third party.)


(2)     The Court requires that all conferral attempts be meaningful. A meaningful conferral is one
done personally such as face-to-face, in a video conference, or over the telephone. *See*
D.C.COLO.MJ, § VI(2); *see also Bautista v. MVT Services, LLC*, No. 16-cv-01086-NYW, 2017
WL 2082925, *4 (D. Colo. Mar. 20, 2017). A meaningful conferral also is one that occurs in a
reasonable timeframe before any relevant deadline.

### 9.    CASE PLAN AND SCHEDULE

a.    Deadline for Joinder of Parties and Amendment of Pleadings: The parties agree that the deadline for filing of amended and supplemental pleadings will be made **May 1, 2025**. Any motion to add punitive damages to the negligence/wrongful death claim against the individual Defendants shall be due upon completion of substantial discovery as provided by Colorado law.

b.    Discovery Cut-off: **December 31, 2025**.

c.    Dispositive Motion Deadline: **February 6, 2026**. The parties also agree that the deadline for filing 702 motions will be **February 6, 2026.**

d.    Expert Witness Disclosure

(1)    Statement regarding anticipated fields of expert testimony, if any:

a)    <u>Plaintiff</u>: Plaintiffs anticipate calling retained experts in the following possible fields: Correctional healthcare including nursing, correctional suicide prevention practices/psychology, criminal defense, economics and any expert necessary for rebuttal and/or impeachment purposes. Plaintiffs may require other experts as well as the case unfolds.

b)    <u>County Defendants</u>: Larimer County Defendants anticipate calling retained experts in the following possible fields: Correctional policy and practices; emergency medical services, economic damages and any expert necessary for rebuttal and/or impeachment purposes. Larimer Defendants reserve the right to disclose and call other experts deemed necessary upon further discovery and investigation of this case.

    c)  <u>Defendant CorrHealth</u>: Defendant CorrHealth anticipates calling retained experts in the following possible fields: correctional healthcare including nursing, mental health, correctional suicide prevention practices, criminal defense, emergency medicine, economics, and any other expert necessary for rebuttal and/or impeachment purposes. Defendant reserves the right to disclose and call other experts deemed necessary upon further discovery and investigation of the case.

    d)  <u>Defendant Palomino</u>: Defendant anticipates endorsing and calling retained experts in the fields of Correctional Nursing and Correctional Health Care including Mental Health/Suicide, and may endorse an expert in economics, and any expert necessary for rebuttal and/or impeachment purposes. Defendant reserves the right to disclose and call other experts deemed necessary upon further discovery and investigation of the case.

(2)    Limitations which the parties propose on the use or number of expert witnesses:

    a)  <u>Plaintiff</u>: Plaintiffs propose the parties shall be limited to a total of six (6) per side.

    b)  <u>County Defendants Proposal</u>: Plaintiff shall be limited to a total of (6) experts. Defendants collectively shall be limited to a total of (10) experts to account for the different standards of care and claims asserted against them. Defendants will make efforts to share in experts where possible but reserve the right to retain and disclose their own experts and should not be forced

to jointly retain expert witnesses, as Defendants have a due process right to
defend the claims against them.

c) <u>Defendant CorrHealth</u>: Defendant CorrHealth proposes Plaintiffs be limited
to a total of six (6) experts. Defendants should be limited to a collective total
of ten (10) experts due to the different standards of care and claims asserted
against them. Defendants will make efforts to share in experts where
possible but reserve the right to retain and disclose their own experts and
should not be forced to jointly retain expert witnesses, as Defendants have
a due process right to defend the claims against them.

d) <u>Defendant Palomino</u>: Defendant Palomino proposes that Plaintiffs be
limited to a total of six (6) experts. Defendants should be limited to a
collective total of ten (10) experts due to the different standards of care and
claims asserted against them. Defendants will make efforts to share in
experts where possible but reserve the right to retain and disclose their own
experts and should not be forced to jointly retain expert witnesses, as
Defendants have a due process right to defend the claims against them.

**COURT**:   The Court limits Defendants to a collective total of eight expert witnesses. Later,
should Defendants see need for more, they shall confer with Plaintiffs about raising
the cap.

(3)   The parties shall designate all affirmative experts and provide opposing counsel and
any pro se parties with all information specified in Fed. R. Civ. P. 26(a)(2) on or before
**September 2, 2025**.

(4)     The parties shall designate all rebuttal experts and provide opposing counsel and any
        pro se party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before
        **October 8, 2025**.

e.      Identification of Persons to be Deposed:

| Name of Deponent* | Date of Deposition | Time of Deposition | Expected Length of Deposition |
|---|---|---|---|
| Ron Harmon | TBD | TBD | 7 hours |
| Colleen Harmon | TBD | TBD | 7 hours |
| Ashley Harmon | TBD | TBD | 7 hours |
| Tyler Harmon | TBD | TBD | 7 hours |
| Caleb Harmon | TBD | TBD | 7 hours |
| Patricia Manke | TBD | TBD | 7 hours |
| Sheriff John Feyen | TBD | TBD | 7 hours |
| Kyle Deneen | TBD | TBD | 7 hours |
| Oscar Palomino | TBD | TBD | 7 hours |
| Russell Graham | TBD | TBD | 7 hours |
| Max Hefner | TBD | TBD | 7 hours |
| Kyra Harmon | TBD | TBD | 7 hours |
| Jordan Persichitte | TBD | TBD | 7 hours |
| Jaclyn Fair | TBD | TBD | 7 hours |
| Christina Samuels | TBD | TBD | 7 hours |
| Lorenza Frias | TBD | TBD | 7 hours |
| Stephanie Gomez | TBD | TBD | 7 hours |
| Christian Manrique | TBD | TBD | 7 hours |
| Nicholas Ivarson | TBD | TBD | 7 hours |
| Tina Padilla | TBD | TBD | 7 hours |
| Erin Grotenhuis | TBD | TBD | 7 hours |

| | | | |
|---|---|---|---|
| Leah Salmans | TBD | TBD | 7 hours |
| Darell Secrist | TBD | TBD | 7 hours |
| Audrey Tucker | TBD | TBD | 7 hours |
| William Giles | TBD | TBD | 7 hours |
| Tracy Perry | TBD | TBD | 7 hours |
| Mark Stiger | TBD | TBD | 7 hours |
| Morgan Gruhot | TBD | TBD | 7 hours |
| Ashlyn Petrilli | TBD | TBD | 7 hours |
| Moriah Zachary | TBD | TBD | 7 hours |
| Kelsey Hammond | TBD | TBD | 7 hours |
| Jason Reibel | TBD | TBD | 7 hours |
| Brian Peranteaux | TBD | TBD | 7 hours |
| Dr. Joseph White, Forensic Pathologist | TBD | TBD | 7hours |
| Dr. Claire Pederson, Hospital treating physician | TBD | TBD | 7 hours |
| Sophia Marie Smith, PA, Discharge Summary | TBD | TBD | 7 hours |
| Rule 30(b)(6), F.R.C.P. deposition(s) of Larimer County on topics TBD | TBD | TBD | 7 hours |
| Rule 30(b)(6), F.R.C.P. deposition(s) of CorrHealth on topics TBD | TBD | TBD | 7 hours |
| Rule 30(b)(6), F.R.C.P. deposition(s) of Health Advocates Network, Inc., on topics TBD | TBD | TBD | 7 hours |
| Other individuals disclosed by the parties in their disclosures and discovery responses | | | |

\* The Parties reserve the right to take additional depositions of persons identified in the
Parties' disclosures and through the course of discovery.

## 10. DATES FOR FURTHER CONFERENCES

a.      Status conferences will be held in this case at the following dates and times:

The Court will hold a Status Conference on **June 10, 2025 at 11:00 a.m.** in Courtroom C-402, on the fourth floor of the Byron G. Rogers United States Courthouse located at 1929 Stout Street, Denver, Colorado. This will be an **in-person** proceeding (although this Court gives Ms. Ah Loy the option of appearing via video teleconference because she is out of state).

b.      District Judge Domenico will generally contact the Parties to set a trial date and Final Pretrial Conference/Trial Preparation Conference date(s) after the dispositive motions deadline has passed and the Court has issued rulings on all such motions. *See* Section IV.A.1 of District Judge Domenico's Practice Standards (Civil Cases).

## 11. OTHER SCHEDULING ISSUES

a.      Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement:

**Plaintiffs**: On January 7, Plaintiffs requested depositions of Larimer County Deputies Russell Graham and Max Hefner, and of CorrHealth medical staff Kyra Harmon, Jordan Persichitte, Jaclyn Fair, Christina Samuels, and Lorenza Frias. During the January 14th 26(f) conference, counsel again discussed the need to promptly schedule these depositions. One of these depositions, of Larimer County Deputy Hefner, has been scheduled. Plaintiff's counsel followed up on the status of the other deponents on January 15th and February 3rd. Counsel for Larimer County Defendants has provided workable dates for the other depositions and is waiting for Deputy Graham's availability. Counsel for Defendant Palomino has provided dates when they are available for these depositions. Counsel for

CorrHealth has indicated that they did not receive contact information for any of the requested CorrHealth deponents until January 29th. As of February 5th, Plaintiffs have not been provided dates for Larimer County Deputy Graham, or for CorrHealth's Kyra Harmon, Jordan Persichitte, Jaclyn Fair Christina Samuels, and Lorenza Frias. Given potential joinder and looming statute of limitation issues, as referenced in the Complaint FN 1, Plaintiffs have requested that these depositions take place in March or early/mid-April at the latest. Plaintiffs respectfully request that this Court order a date certain, within a week, by which time Defendants provide availability for these depositions.

Defendants stated their position at the Scheduling Conference:

**COURT**:        Counsel for Defendant CorrHealth shall provide dates for the above requested depositions within **ten days** of the date of this Scheduling Order (i.e., by **February 22, 2025**).

b.        Anticipated length of trial to the jury:

The parties anticipate a ten (10) day jury trial. The Parties do not anticipate conducting any pretrial proceedings at the District Court's facilities in Colorado Springs or Durango, unless set by this Court.

## 12. NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.Colo.LCivR 6.1(c) by submitting proof that a copy of the motion has been served upon the moving attorney's client, all attorneys of record, and all *pro se* parties.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.Colo.LCivR 7.1(a), the Uniform Civil Practice Standards for Magistrate Judges, and any additional Order of the assigned Magistrate Judge regarding any discovery dispute procedures.

Counsel and unrepresented parties are reminded that any change of contact information must be reported and filed with the Court pursuant to the applicable local rule.

### 13. AMENDMENTS TO DISCOVERY AND SCHEDULING ORDER

The Scheduling Order cannot be altered or amended except upon a showing of good cause.

DATED at Denver, Colorado, this 12th day of February, 2025.

BY THE COURT:

_____
Timothy P. O'Hara
United States Magistrate Judge